[No. D045268. Fourth Dist., Div. One. Aug. 22, 2005.]

WILLIAM B. KOLENDER, as Sheriff, etc., Plaintiff and Appellant, v. SAN DIEGO COUNTY CIVIL SERVICE COMMISSION, Defendant and Respondent;
TIMOTHY BERRY, Real Party in Interest and Respondent.

**COUNSEL**

Robert P. Faigin and Sanford A. Toyen for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Bobbitt & Pinckard and Everett L. Bobbitt for Real Party in Interest and Respondent.

**OPINION**

**O'ROURKE, J.**—The San Diego County Sheriff, William Kolender (the Sheriff), terminated Sheriff's Deputy Timothy Earl Berry for lying to cover up a fellow deputy's physical abuse of an inmate. Berry appealed to the San Diego County Civil Service Commission (the Commission), which reduced the penalty to a 90-day suspension. The Sheriff filed a petition for writ of mandate and requested the superior court vacate the Commission's order. (Code Civ. Proc., § 1094.5.) The trial court denied the petition because it found the Commission did not abuse its discretion.

The Sheriff contends we should reverse the trial court's decision because (1) the Commission abused its discretion in reducing Berry's penalty and (2) the Commission's enabling statutes must be harmonized with other authorities that grant the Sheriff the right and duty to manage his department. We agree the Commission abused its discretion and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

When Berry joined the Sheriff's Office, he signed a "Recruit Honor Code" that stated, "I will not lie, cheat or steal. I will not tolerate those who do. I will treat everyone fairly and respectfully . . . . I tell the truth and ensure that the full truth is known. I do not lie."

On September 5, 2002, Berry was still on probation and subject to termination without cause when the following incident occurred. He was on duty at the George Bailey Detention Center, and the inmates were preparing for laundry detail when one inmate became disorderly and belligerent towards Sheriff's Deputy Alfonso Padilla. Berry accompanied Padilla in taking the inmate out of the housing module, and as far as the medical holding area, in the direction of the recreation yard. Berry witnessed Padilla yell provocative words at the inmate, forcefully hold the inmate, and intermittently tug at him. Padilla indicated to Berry that he no longer needed Berry's cover, and therefore Berry did not see Padilla's treatment of the inmate in the recreation yard. Thereafter, Padilla repeatedly bumped the inmate's head against the wall and caused him to suffer injuries for which he needed medical care.

That same day, the inmate filed a grievance regarding the incident and Berry's Sergeant questioned Berry about it. Berry followed Padilla's request and lied about the incident, saying Padilla simply took the inmate to the medical holding area. Berry testified the lie was important to Padilla, who probably knew he went "overboard with the inmate." Seven days later, as the investigation proceeded and the investigators received other information regarding the incident, they confronted Berry and challenged the truth of his account. Berry testified that at some point during his second conversation with the investigator, which was a formal taped interview, an investigator stopped his tape recorder and told Berry he was not being honest. Berry then admitted that when first questioned regarding the incident, he had lied to protect Padilla. Berry proceeded to tell the investigators the truth.[1]

---

[1] Most of the account of the underlying incident is taken from the hearing officer's summary of Berry's testimony in the disciplinary proceedings for Padilla, and from Berry's testimony at his own hearing before the Commission.

The Sheriff terminated Berry for his lack of truthfulness (cause I); and acts incompatible with and/or inimical to the public service and with the Sheriff's Department executive order and its mission, vision, values and goals (cause II).[2]

Berry appealed his termination to the Commission and stipulated to the facts underlying the truthfulness cause; therefore, the only issue in dispute was Berry's penalty. Some of the Commission's findings include, "it was conceded by all witnesses that not all lies require charges under § [2.46] or lead to termination. However, all witnesses including [Berry] agreed the lie in question was serious and not frivolous." Also, a "code of silence" existed in the department, and Berry was assigned to a so-called, "angry team" of "rogue" deputies who told him to forget everything he learned at the Academy and "to go along to get along."

The Commission ruled, "The Department proved all of the charges contained in the Order of Termination and Charges. . . . Nevertheless, this Hearing Officer concludes that, under the circumstances presented at the Commission hearing, termination is excessive."[3]

## DISCUSSION

### I

### A.

██  " 'When review of an administrative determination by administrative mandamus is sought and the trial court has applied an abuse of discretion

---

[2] The department relied on sections 7.2 (d) and (s) of rule VII of the Rules of the Civil Service Commission as related to the Sheriff's Policy and Procedure, section 2.46, relating to truthfulness.

[3] The Commission listed the following factors it weighed in deciding whether Berry's "admittedly serious lie" merited termination: (a) although Berry was 40 years old, he was new to the Sheriff's Office, having just left the academy a few months earlier. Berry was retired from the Navy; (b) Berry had been placed in a team that was known by the department and the inmates as the "angry team" because of its aggressive physical enforcement of discipline; (c) the senior members of the "angry team" told Berry to forget everything he learned at the academy and to go along to get along; (d) one lieutenant and two sergeants testified that a "code of silence" existed in the department, and that the "angry team" was in fact a rogue team; (e) Berry went along with Padilla's lie in order to avoid being ostracized and possibly losing his teammates' protection if conflicts arose with the inmates; (g) Berry poignantly testified he loved his job; that he will always regret his September 5th lie, but he was not a person who lied.

standard, the scope of review is the same in the appellate court as it was in the superior court.' " (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 227 [282 Cal.Rptr. 240] (*Talmo*).) The agency's discretion is not unfettered, and reversal is warranted when the administrative agency abuses its discretion, or exceeds the bounds of reason. Here, the Commission abused its discretion in reinstating Berry, and ignored the controlling principles enunciated in *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216 [40 Cal.Rptr.2d 583] (*Hankla*).

██ "An abuse of discretion occurs where, as here, the administrative decision manifests an indifference to public safety and welfare. 'In considering whether such abuse occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, "[h]arm to the public service." [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.' [Citation.] The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk of incurring liability." (*Hankla, supra,* 34 Cal.App.4th at pp. 1222–1223.) Accordingly, this is not a case where reasonable minds can differ with regard to the appropriate disciplinary action. (*Lowe v. Civil Service Com.* (1985) 164 Cal.App.3d 667, 677 [210 Cal.Rptr. 673].)

██ "A deputy sheriff's job is a position of trust and the public has a right to the highest standard of behavior from those they invest with the power and authority of a law enforcement officer. Honesty, credibility and temperament are crucial to the proper performance of an officer's duties. Dishonesty is incompatible with the public trust." (*Talmo, supra,* 231 Cal.App.3d at p. 231 [sheriff's deputy abused jail inmates and lied about it to his superiors].) Dishonesty is not an isolated act; it is more a continuing trait of character. False statements, misrepresentations and omissions of material facts in internal investigations, if repeated, would result in continued harm to the public service. (See *Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 972 [221 Cal.Rptr. 90] [regarding a sheriff's deputy who falsely reported his illness to obtain sick leave].)

Berry's wrongdoing implicated important values essential to the orderly operation of the office. He lied regarding a grave matter, and thereby forfeited the trust of his office and the public. (Cf. *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 770, fn. 13 [221 Cal.Rptr. 779, 710 P.2d 845].) Berry apparently did not believe he had a professional duty to correct his first lie on his own, and he elected not to do so. Instead, Berry let one week go by, and

only told the truth after the office discovered his lie and pressed him for the truth; otherwise, he might never have done so. Berry was 40 years old, and in his second career. He had just completed training at the academy, where the office's instructions regarding truthfulness had recently been reinforced.

■ Next, Berry was complicit in covering up abuse of an inmate.[4] The safety and physical integrity of inmates is one of the office's paramount responsibilities. No requirement exists that the San Diego Sheriff's Office retain officers who lie and protect deputies who harm inmates; rather, the Sheriff was entitled to discharge Berry in the first instance, especially in light of the Commission's findings regarding the existence of the "code of silence," the physical abuse of inmates, and the "rogue team" within the office.

The Commission partly justified its modified penalty by its finding that, "at the formal September 12th hearing, on [Berry's] own volition, he told the truth and risked everything. Subsequently, his testimony before the Commission led to upholding the termination of [Padilla]." But Berry did nothing special by testifying truthfully against Padilla; indeed, the dishonesty and truthfulness charges against Padilla would have been easier and more quickly proved if Berry had simply responded honestly to the investigators when he first was asked.

### B.

■ Berry argues the Sheriff did not have an established policy requiring the termination of sheriff's deputies who were untruthful, and investigators

---

[4] Berry testified as follows at his hearing before the Commission:

"Q And you testified at the Civil Service hearing [regarding Padilla's termination] that you were going to be—that you knew you were going to be terminated; correct?

"A I believe so.

"Q Okay. As a detentions deputy whose responsibility it is to protect and provide for the inmates, that's your role as a detentions deputy, isn't it?

"A Yes. That's what I do. Not all the deputies there feel that way, but that's what I do.

"Q Okay. By lying to protect Deputy Padilla as you said you were, were you acting in the best interests of the inmates?

"A No

"Q Okay. By telling the lie that you did, you basically provided an alibi to Deputy Padilla, making it two deputies' words against one inmate's word, didn't you?

"A I wasn't thinking of—thinking of it like that.

"Q Okay. I'm not asking you if you were thinking of it. But now that you reflect, that's what you did, isn't it?

"A That—yeah, that's what—

"Q Okay.

"A But at that time, I wasn't thinking—about it like that."

typically did not terminate those who eventually told the truth. "While at common law, every dog was entitled to one bite, we know of no rule of law holding every deputy sheriff is entitled to [tell one lie] before he or she can be discharged. . . . [¶] . . . When it comes to a public agency's imposition of punishment, 'there is no requirement that charges similar in nature must result in identical penalties.' " (*Talmo, supra,* 231 Cal.App.3d at pp. 229–230.)

The hearing officer provided a similar rationale for his modified penalty, "to me, the message should be that you *ultimately* need to tell the truth, and if you do, you won't be terminated if you do that." (Italics added.) We disagree with the hearing officer because his reasoning, logically extended, encourages sheriff's deputies to play cat-and-mouse games with investigators and only tell the truth when they determine the moment is opportune to do so, or if they are cornered to do so because their lie has been found out.

Because of our resolution of this issue on the grounds of abuse of discretion, we need not address the Sheriff's other contentions, including the claim insufficient evidence supported the Commission's modified penalty.

## II

■ Berry asks us to impose sanctions against the Sheriff's Office for filing a frivolous appeal because no case law supports Berry's "convoluted argument that the Sheriff has some sort of unique status as an elected Sheriff that his decision making must be deferred to by the civil service commission." (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(e); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] [An appeal is frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit"].) The subjective standard is not satisfied because there is no evidence of bad faith: plaintiff "had nothing to gain from delay." (*In re Marriage of Flaherty, supra,* at p. 651.) The appeal is not objectively frivolous either, and contrary to Berry's assertion, the standard of deference a Civil Service Commission should give a sheriff's findings of fact was not addressed in *Lowe v. Civil Service Com., supra,* 164 Cal.App.3d 667. We therefore deny Berry's request for sanctions.

## DISPOSITION

The judgment denying the petition for a writ of mandate is reversed. The trial court is directed to enter a new and different order granting the writ as prayed. Each party is to bear its own costs on appeal.

McConnell, P. J., and Haller, J., concurred.