[No. C063811. Third Dist. Oct. 7, 2010.]

COUNTY OF SISKIYOU, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
RAEGAN DUNCAN, Real Party in Interest and Appellant.

COUNSEL

Law Office of Stephen E. Goldberg, Stephen E. Goldberg; Law Office of John W. Lawrence and John W. Lawrence for Real Party in Interest and Appellant.

Richard C. Bolanos, Alison C. Neufeld, Stacy L. Herberg and Liebert Cassidy Whitmore for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**SCOTLAND, Acting P. J.**[*]—This case illustrates the limited role that a judge has in reviewing a decision of the State Personnel Board regarding what employment consequence is appropriate when a public employee engages in misconduct that causes discredit to a public agency and exposes the agency to civil liability.

Raegan Duncan, an employee of the Siskiyou County Department of Human Services (DHS), was acquainted with a father who was in the midst of a contested court proceeding over whether his children should be placed in his custody or with their mother. To help her friend, Duncan submitted a declaration in the court proceeding, stating the father is an excellent parent who "unquestionably should have sole custody of his children with supervised visits given to the mother." Referring to him as her "client," the declaration represented that Duncan's opinion was based on her contacts with the father due to her employment, including "home visits" she made to his residence as part of her duties with DHS. Her declaration ended by noting the father "is the rare client/person that makes my job fulfilling."

Actually, Duncan was not employed with the child protective services division of DHS, and her duties as a public employee did not include conducting home visits to evaluate parental fitness. Rather, she assessed the eligibility of applicants for public assistance programs and services.

The misrepresentation in Duncan's declaration came to the attention of DHS when the mother in the contested child custody dispute filed a formal complaint regarding the declaration.

---

[*]Retired Presiding Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

When confronted about the declaration, Duncan was dismissive of DHS's concerns. Stating, "Hell I fully believe that I didn't do anything wrong," Duncan complained, "what the phuck?" and protested she was "get[ting] screwed" for doing "something nice."

Concluding Duncan's declaration was dishonest and constituted conduct that was "unbecoming" of public service and caused discredit to the agency, DHS terminated her employment.

Duncan appealed to the State Personnel Board. While it did not find that Duncan was intentionally dishonest, the board found that Duncan wrongly implied she "was rendering a professional assessment in her capacity as a [DHS] employee," improperly risked influencing a court's decision in a matter that could affect the health and safety of children, and exposed DHS to potential liability. Citing mitigating facts, the board ruled that the termination of Duncan's employment was excessive, and that the appropriate consequence was a two-month suspension, which would be sufficient to alert her to the seriousness of her misconduct.

By petition for writ of administrative mandamus, the employer challenged the State Personnel Board's ruling. The superior court held that the board abused its discretion by reducing the penalty from termination of employment to a two-month suspension. Duncan then appealed to this court.

As we will explain, it is immaterial how a superior court judge or we would have ruled if serving as a member of the State Personnel Board. In reviewing the board's determination of the proper penalty to be imposed for misconduct of a public employee, a judge's role is simply to decide whether the board abused its discretion, i.e., acted arbitrarily, capriciously, or beyond the bounds of reason. If reasonable minds might differ on the appropriate degree of the penalty, a judge cannot substitute his or her judgment for that of the board.

Here, the superior court held that Duncan's misrepresentation of her public position was a calculated, dishonest effort to help a friend in a court proceeding, and that such dishonesty calls for termination of her employment, regardless of how well meaning her intentions were and despite the fact she had not engaged in prior misconduct. Simply stated, the court found that termination of employment was the appropriate penalty because the facts established that Duncan was dishonest, and such dishonesty by a public employee is intolerable.

Had the State Personnel Board upheld the termination of Duncan's employment, we would affirm the decision because it cannot be said that the penalty would be arbitrary, capricious, or beyond the bounds of reason under the circumstances of this case. However, the board concluded otherwise, declining to find that Duncan was intentionally dishonest, and holding a two-month suspension was the appropriate consequence. This, too, is a decision that a reasonable person could make under the circumstances.

Thus, while we commend the superior court for the diligence it displayed in crafting its six-page ruling, we shall reverse the judgment and direct the court to enter a new judgment, denying the county's petition for writ of administrative mandamus.

## FACTS AND PROCEDURAL BACKGROUND

DHS performs social service functions, including employment and temporary assistance services (ETAS) and child protective services (CPS), for the County of Siskiyou (the County). Duncan was employed as an eligibility worker in the ETAS division. Because she was not employed in the CPS division, her responsibilities did not include home visits to evaluate parental fitness. Rather, her duties as an eligibility worker included interviewing applicants for public assistance programs and services, determining their eligibility, and preparing and processing related documents. ETAS eligibility workers rarely make home visits and need approval of a supervisor before doing so. Duncan was trained on the limited purpose of a home visit, namely, to determine nothing more than eligibility for public assistance programs.

DHS's disciplinary action against her stemmed from a declaration that Duncan submitted on behalf of Timothy M. in a superior court child custody proceeding. Duncan was acquainted with him through a close friend of hers, with whom Timothy M. shared a residence. Duncan also knew him because he received ETAS benefits and Duncan was his eligibility worker.

Timothy M. was involved in a custody dispute with his children's mother in the Shasta County Superior Court. Seeking to obtain sole custody of the children, he asked Duncan to submit a declaration to the court, attesting to his abilities as a father. She complied.

Duncan never conducted a home visit with Timothy M. in the course of her official duties. However, she had seen him with his children in his home on approximately 15 occasions while she was visiting her friend or dropping off ETAS eligibility forms. She had also observed him with his children about eight times when they came to Duncan's office. According to Duncan,

she agreed to provide the declaration because she sincerely believed that Timothy M. was a good parent and responsible person. Duncan based her opinion of him on her observations as a personal acquaintance and on her interactions with him in the course of her employment. She did not know the children's mother.

Duncan's declaration, made under penalty of perjury and filed with the court on June 13, 2006, states: "I have known Tim [M.] since October, 2004 when I became his Medi-Cal and Food Stamp Worker. [¶] In all of my contacts with Mr. [M.] I have found him to be very reliable and responsible. I have observed his relationship with his children and without any reservation, can attest to it being one of love, respect and loyalty. [¶] In the entire time I have known Mr. [M.], he has never applied for any form of cash aid (AFDC/TANF) as he works to support and provide for his children. This, in my opinion and experience, speaks very highly of his integrity and dedication to his family. [¶] In the course of my duties, I have made home visits to Mr. [M.]'s residence and have always found the home to be clean and neat and the children clean and very well provided for. [¶] Mr. [M.] is an excellent parent and unquestionably should have sole custody of his children with supervised visits given to the mother. It is very seldom in my profession that a client shines through as Mr. [M.] does. Mr. [M.] is the rare client/person that makes my job fulfilling."

The declaration was not on DHS letterhead, and Duncan did not sign it using her job title. Duncan later explained that, because DHS did not have a policy against submitting declarations in court proceedings on behalf of clients, she did not think it would be improper to do so. Thus, she did not consult with a supervisor about the matter. Although she was not at Timothy M.'s home for what would technically be a "home visit," Duncan defended the use of this phrase by saying she observed him there with his children when she dropped off some aid eligibility forms for her friend.

In July 2006, the mother of Timothy M.'s children filed a formal complaint with DHS concerning Duncan's declaration. The complaint stated: "I have concerns about the legality of a former social worker recommending to the courts that I am allowed only supervised visitation with my children. Ms. Duncan has never visited my home nor observed my relationship with my children."

At some point prior to July 18, 2006, DHS informed Duncan about the mother's complaint, and Duncan learned that she could be subject to disciplinary action. After hearing that Timothy M. was awarded full custody of his children, Duncan sent an e-mail to Mike Carroll, a friend who worked as an

investigator with the Siskiyou County District Attorney's Office, telling him of her dilemma at work but indicating she was pleased with the outcome of the custody battle. Duncan observed, "Hell I fully believe that I didn't do anything wrong. That's why I was crying when they pulled this on me. I felt I was doing a Human Service—but hell screw me again. I don't get it. I do something nice & I get screwed for it." Duncan also stated: "In any event, the guy got full custody of his kids. Yippi! I don't thing [*sic*] I've ever seen a custody request go thru [*sic*] so quickly."

When Carroll said to her, "I'm not at all sure I completely understand the 'problem,' " Duncan replied, "It sounds like that I make home visits in the course of my duty when it's been on my own time. I mixed personal viewing & business together in this letter. [P]huck me. [B]ut hell it's all true so what the phuck?"

Responding to the mother's complaint, the County stated that it had no role in the Shasta County child custody proceedings and that Duncan was not acting on the County's behalf when she submitted her declaration to the court. Explaining that, contrary to what her declaration implied, Duncan did not make home visits that were in any way related to her duties as a DHS employee, the County forwarded this information to the Family Law Division of the Shasta County Superior Court to clarify any misunderstanding.

The County then terminated Duncan's employment for "conduct either during or outside of duty hours which causes discredit to the agency or the employment," "[c]onduct unbecoming of an employee in the public service," and "[d]ishonesty."

Duncan filed an administrative appeal with the State Personnel Board.

The County stated its position as follows: The essence of the case was Duncan's deceptive and dishonest conduct that caused discredit to the County and that was unbecoming of public service. She "authored and signed a woefully inaccurate declaration under penalty of perjury," and submitted it in a child custody dispute in a judicial proceeding in order to influence the court's decision. She did so in a deceptive manner indicating she had a "specific plan to carry out her actions without any County knowledge whatsoever." She was successful in her "unauthorized attempt to inappropriately influence" the court proceedings on behalf of her friend. Only because of the complaint by the mother of the children did Duncan's supervisors learn what Duncan had done. Duncan's declaration was "seriously inaccurate," "amounted to nothing less than an effort to mislead and manipulate a court process," and "falsely purported to a significant extent to speak on behalf of

the County and therefore presented a distinct danger of County liability." Termination of Duncan's employment was warranted because she knowingly went outside the authorized bounds of her job in an inappropriate and deceitful attempt to manipulate a court process, and she knowingly attempted to conceal her misdeed from her supervisors.

Duncan disagreed. Her position was as follows: Her declaration did not result in perjury charges against her or any lawsuits against the County. She had not been willfully disobedient or dishonest, had cooperated with the investigation, and had not been insubordinate. Termination of her employment was unwarranted because she did not intentionally misrepresent that her opinion was professional rather than personal, given that she did not submit the declaration under the County's letterhead and did not sign it using her title. She merely referred to her job in order to explain how she had come to observe Timothy M. with his children. She had never been told that it was inappropriate to submit a declaration on behalf of a client, and there was no policy against doing so.

The administrative law judge (ALJ) summarized the County's grounds for firing Duncan as follows: She submitted a declaration on behalf of an acquaintance, falsely stating that she had personal knowledge of the acquaintance's fitness as a parent, and falsely implying that she was submitting the declaration in her official capacity. Then, when asked by her supervisor, Trish Barbieri, whether she had any knowledge of the outcome of the custody dispute, Duncan falsely stated she did not.

The ALJ ruled as follows: Because the County did not establish that Duncan was aware of the results before she talked to Barbieri, the County failed to establish its claim that Duncan lied to Barbieri about her knowledge of the outcome of the custody case. Based "on both her observations as a personal acquaintance and her interactions with Timothy M. in the course of her employment, Duncan sincerely believed he was a good parent." But "a clear relationship exist[ed] between [her] conduct and her employment"; and her declaration on behalf of Timothy M. "caused discredit to her employment" by implying that she "was rendering a professional assessment in her capacity as a [DHS] employee." The ALJ did not make a specific finding that Duncan was dishonest, concluding only: "Anyone reading [Duncan's] declaration could mistakenly but reasonably believe that she was rendering an opinion on behalf of the Department. Furthermore, [her] use of the term 'home visits,' her employment with the Department that also performs CPS functions, and her other references to her employment could lead a reader to reasonably but mistakenly conclude that [Duncan's] opinion reflected that of a trained CPS social worker on behalf of the Department."

As to the penalty for the misconduct, the ALJ found as follows: Duncan's conduct resulted in "harm to the public service" because it "created the appearance that [DHS] was weighing in on a custody dispute to help Timothy M. prevail over the mother"; thus, leading to a complaint by the mother of the children. Duncan "risked improperly influencing the Court's decision in a matter that could affect the health and safety of the children," and "exposed [DHS] to potential liability." Factors weighing in favor of a "lesser penalty" were that Duncan was "a long-term employee with no prior adverse actions"; she "did not violate an explicit Department policy prohibiting [employees from submitting declarations such as the one submitted by Duncan]"; her declaration "did not appear on Department letterhead, and she neither specifically identified her employer or job title, nor stated that she performed CPS functions." Nevertheless, the likelihood of recurrence was "very high" because Duncan "did not recognize the impropriety of her actions, and was extremely dismissive of [DHS's] concerns." She did not believe that her declaration was misleading and "demonstrated no remorse when she testified at [the hearing before the ALJ]." Accordingly, her conduct "warrant[ed] a strict penalty"; however, dismissal was "too harsh," considering the factors in mitigation. "A two-month suspension [was] appropriate under the circumstances, and [was] sufficient to alert [Duncan] to the seriousness of her conduct."

The State Personnel Board upheld the ALJ's decision, and denied the County's petition for rehearing.

The County then filed in the superior court a petition for writ of administrative mandamus, claiming the State Personnel Board abused its discretion because its findings did not support the determination to reduce Duncan's penalty to a two-month suspension.

The superior court judge who ruled on the petition stated the sole issue was whether the reduction in penalty from termination to suspension was proper given the State Personnel Board's findings. Although not asked to review the sufficiency of the findings, the judge noted the ALJ "inexplicitly did not make an express finding that Duncan was dishonest," even though, in the judge's view, such a finding was compelled by the evidence. Finding that Duncan was dishonest and that her declaration intended to mislead the family law court in the custody proceeding, the judge held the mitigating factors considered by the board were legally insufficient to overcome Duncan's dishonesty, which, "when it comes to the public trust" was "intolerable."

Therefore, the judge held, the only valid findings are that Duncan's conduct caused discredit to her employer, the County; she "attempted to use her standing as a [DHS] employee to benefit a personal acquaintance"; "anyone reading her declaration could mistakenly but reasonably believe she was rendering an opinion on behalf of [DHS] and conclude that [it] reflected [the opinion] of a trained CPS social worker on behalf of [DHS]"; her conduct exposed the Department (County) to potential liability; and the "likelihood of recurrence [was] very high." For these reasons, the judge ruled, the State Personnel Board's decision to reduce the penalty from termination of employment to a two-month suspension was an abuse of discretion.

## DISCUSSION

■ "The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk of incurring liability." (*County of Santa Cruz v. Civil Service Commission of Santa Cruz* (2009) 171 Cal.App.4th 1577, 1582 [90 Cal.Rptr.3d 394] (hereafter *County of Santa Cruz*).) Thus, "in the context of public employee discipline," the "overriding consideration" is "the extent to which the employee's conduct resulted in, or if repeated is likely to result in, 'harm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence. [Citation.]" (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 218 [124 Cal.Rptr. 14, 539 P.2d 774]; accord, *County of Santa Cruz, supra*, 171 Cal.App.4th at p. 1582.)

The State Personnel Board (SPB) is an agency of constitutional authority; hence, once the SPB renders a decision, its determination regarding whether the facts justify discipline and, if so, what the appropriate penalty should be, will not be disturbed in a mandamus proceeding unless the SPB patently abused its exercise of discretion by acting arbitrarily, capriciously, or beyond the bounds of reason. (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404 [107 Cal.Rptr.2d 39] (hereafter *Pollak*); *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54 [76 Cal.Rptr.2d 356].)

In reviewing a decision of the SPB, a court must view the record in the light most favorable to the SPB's decision and uphold its factual findings if supported by substantial evidence. (*Pollak, supra*, 88 Cal.App.4th at p. 1404.) " ' "Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed." [Citations.]' [Citation.]" (*Ibid.*) Thus, if reasonable minds may differ as to the propriety of the penalty, there is no abuse of discretion. (*County of Los Angeles v. Civil Service Com.* (1995) 39 Cal.App.4th 620, 634 [46 Cal.Rptr.2d 256].)

Here, reasonable minds could differ as to the nature of Duncan's misconduct and whether a suspension or termination of her employment was the appropriate penalty.

The superior court's ruling was based upon its conclusion that, on the undisputed facts, Duncan engaged in dishonesty as a matter of law. (See *Pollak, supra,* 88 Cal.App.4th at p. 1404 [when a matter presents a question of law, a court may conduct a de novo review].)

However, the SPB implicitly found that Duncan was not being intentionally dishonest in the way in which she wrote and submitted her declaration supporting Timothy M. in the contested child custody proceeding. (See *In re Alcorn* (1995) SPB Precedential Dec. No. 95-03 [dishonesty requires intent to deceive].)

This implied finding is supported by evidence viewed in the light most favorable to Duncan. She observed Timothy M. with his children on several occasions, both at her workplace and at his home, and sincerely believed that he was a good parent. DHS did not have a policy precluding its employees from submitting declarations in court proceedings on behalf of clients or acquaintances. Duncan's declaration did not claim that she was a CPS worker, it was not on DHS letterhead, and she did not use her ETAS title. Her misconduct was filing a declaration under penalty of perjury stating that she observed Timothy M. with his children while making "home visits" in the course of her official duties—which was a misrepresentation because Duncan did not make "home visits" as the term is used in her official duties; she simply dropped off ETAS eligibility forms to her friend, who shared a residence with Timothy M.

From these facts, the SPB reasonably could conclude that, while Duncan was careless in her use of terminology and negligently misled anyone reading her declaration, Duncan was expressing her personal opinion regarding Timothy M.'s parenting abilities (albeit based partially on her professional observations of him) and that she did not intend to suggest she was expressing DHS's opinion in her official capacity.

Although the SPB implicitly found that Duncan did not have the intent to deceive, it concluded that (1) Duncan wrongly implied she "was rendering a professional assessment in her capacity as a [DHS] employee," (2) her declaration had great potential to negligently deceive the family law court in the child custody proceeding, (3) it exposed the County to potential liability, and (4) the likelihood of a recurrence of Duncan's bad judgment was high because she did not recognize the impropriety of her conduct and was dismissive of DHS's concerns. On the other hand, Duncan was a longtime

employee with no prior adverse employment actions; she did not violate an explicit policy prohibiting employees from submitting such declarations on behalf of clients; and, as we have noted, the SPB implicitly found that she was not intentionally deceptive.

Under the circumstances, the SPB reasonably could conclude that Duncan's misconduct warranted a strict penalty, but that the penalty of dismissal was too harsh, considering the factors in mitigation.

In sum, it was well within the SPB's discretion to conclude that a two-month suspension was more appropriate than the termination of her employment, and was sufficient to alert her to the seriousness of her conduct, such that it would not recur.

The County disagrees, citing *County of Santa Cruz, supra*, 171 Cal.App.4th 1577 and *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716 [34 Cal.Rptr.3d 1] (hereafter *Kolender*) for the proposition that discipline short of dismissal cannot be countenanced in public service when an employee's dishonesty has "threatened the integrity of the Department" and has caused harm to the employer.

■ However, those decisions and other authorities do not compel discharge from employment as a penalty for dishonesty in every circumstance.

"Termination is the most extreme penalty that can be imposed in the employment context, depriving the employee of the means of livelihood and making it more difficult to find other employment because of the questionable circumstances under which the prior job ended. [Citation.] By contrast, a suspension does not destroy but merely interrupts employment. [Citation.]" (*Paoli v. Civil Service Com.* (1993) 12 Cal.App.4th 1073, 1077 [15 Cal.Rptr.2d 874].) Although termination is an acceptable penalty for dishonesty by a public employee (*Pegues v. Civil Service Com.* (1998) 67 Cal.App.4th 95, 107–109 [78 Cal.Rptr.2d 705]), it does not ineluctably follow that dismissal is required in all cases of dishonesty. (*Catricala v. State Personnel Bd.* (1974) 43 Cal.App.3d 642, 644–648 & fn. 2 [118 Cal.Rptr. 89].)

In *Kolender*, a deputy sheriff was discharged for lying to cover up a fellow deputy's physical abuse of an inmate. (*Kolender, supra*, 132 Cal.App.4th at pp. 719–720.) Overturning the San Diego County Civil Service Commission's decision to reduce the penalty to a 90-day suspension, the Court of Appeal held an abuse of discretion occurs where " 'the administrative decision manifests an indifference to public safety and welfare' "; so it was in *Kolender* because the deputy sheriff "lied regarding a grave matter"

and his dishonesty "implicated important values essential to the orderly operation of the office"; thus, he "forfeited the trust of his office and the public." (*Id.* at p. 721.)

In *County of Santa Cruz*, a sergeant was demoted to a deputy sheriff after he created a hostile work environment for a female officer, later became hostile toward the victim after having been ordered not to contact her, then lied about it to a supervisor. (*County of Santa Cruz, supra*, 171 Cal.App.4th at pp. 1579–1580.) Overturning the Civil Service Commission of Santa Cruz's decision to reduce the penalty to a 30-day suspension, the Court of Appeal held the conduct was "no less serious or important than the deputy's lies to protect his colleague in *Kolender*. The honesty and integrity of a sergeant in the Sheriff's department is paramount to the public safety and trust"; "breach of that trust is cause for grave concern"; and "his interference in the internal investigation of the gender bias claim placed the county at risk of liability, and 'exposed the governmental entity to the prospect of litigation.' [Citation.]" (*Id.* at p. 1583.)

██ Here, in contrast, Duncan's indiscretion was starkly different than the blatant dishonesty, insubordination, and interference with internal investigations in *Kolender* and *County of Santa Cruz*. The SPB did not find Duncan was dishonest, instead relying on mitigating factors that help to explain why it implicitly found that Duncan was not intentionally deceitful. And she did not attempt to cover up her misconduct. In the SPB's view, she simply failed to understand how her declaration could be misconstrued, and she was obtuse about the nature of what she had done wrong.

If not corrected, Duncan's lack of insight may eventually lead to conduct that places her employment in jeopardy. However, based on the facts of her misconduct presented in this case, we cannot say that the SPB acted arbitrarily, capriciously, or beyond the bounds of reason in reducing the penalty from termination to a two-month suspension, during which time Duncan could reflect on the seriousness of her misconduct.[1]

## DISPOSITION

The superior court's judgment is reversed, and the court is directed to enter a new judgment denying the County's petition for a writ of administrative

---

[1] In light of our conclusion, we deny the County's request for judicial notice, filed on June 9, 2010, and decline to address Duncan's alternative argument.

mandamus. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Nicholson, J., and Robie, J., concurred.

A petition for a rehearing was denied October 28, 2010, and the petition of respondent County of Siskiyou for review by the Supreme Court was denied December 21, 2010, S188237. George, C. J., and Werdegar, J., did not participate therein.