Filed 1/21/21  Williams v. Cal. State Personnel Bd. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| PERRY WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA STATE PERSONNEL BOARD, ET AL.,<br><br>    Defendant and Respondent. | 2d Civ. No. B300667<br>(Super. Ct. No. BS174290)<br>(Los Angeles County) |

Perry Williams challenged his non-punitive termination and dismissal from the California Department of Corrections and Rehabilitation ("CDCR") by writ of administrative mandamus. The superior court denied his petition but reversed the State Personnel Board's (the "Board") finding of dishonesty under Government Code section 19572, subdivision (f).[1]  We conclude

---

[1] All statutory references are to the Government Code unless otherwise noted.

substantial evidence supported the Board's finding and reinstate its decision in full.  We affirm the judgment as so modified.

STATEMENT OF FACTS

CDCR hired Williams as a correctional officer in 2008.  He transferred to the position of parole agent in 2010 and thereafter worked at the Van Nuys unit of CDCR's Division of Adult Parole Operations.  A condition of Williams' employment was that he remain eligible to carry a firearm at all times.

Williams was involved in a domestic violence incident in September of 2015.  Two officers with the Los Angeles Police Department ("LAPD") visited his apartment in response to reports he had assaulted a man named Phillip Henry.  The officers found Henry standing alone outside with bruises and cuts.  He initially blamed Williams for his injuries but promptly recanted his story and asked the officers to leave.  Williams did not report the LAPD visit to CDCR for five weeks.  He denied being present in the apartment that night or involved with the incident leading up to the 911 call.  Around the same time, CDCR placed Williams on long-term medical leave after he suffered injuries while arresting a parolee.  The record indicates his medical leave was not related to the domestic violence incident.

Officers visited Williams's apartment again in March of 2017. He was still on medical leave from CDCR.  They found Williams and Henry bruised and cut from a physical altercation but did not arrest them.  The men petitioned for mutual restraining orders, which the trial court issued after a hearing.  The orders prohibited both men from owning or possessing firearms.

Williams did not immediately report the restraining order or its firearms provision to CDCR.  Instead, he hired an attorney

to seek a modification allowing him to keep his CDCR-issued firearm and wear it to work when his medical leave ended. CDCR learned about the restraining order when a special agent spoke to Henry in May of 2017.

CDCR served Williams with two notices on July 14, 2017: (1) a Notice of Non-Punitive Termination ("NPT") pursuant to section 19585; and (2) a Notice of Adverse Action ("NOAA") pursuant to section 19572. The NPT alleged Williams no longer met the minimum qualifications of his job because he could not carry a firearm. The NOAA alleged a list of conduct violations under section 19572 relating to the domestic violence incidents and Williams's lack of candor with CDCR and LAPD. Both notices had an effective date of July 21, 2017.

Williams appealed the notices. Following a three-day hearing, the Administrative Law Judge sustained the NPT because CDCR proved the restraining order kept Williams from legally owning and possessing a firearm at the time CDCR served notice.[2] He rejected Williams's arguments that his efforts to reinstate his rights precluded his termination. The ALJ also sustained the NOAA, finding Williams's failure to report the restraining order constituted legal cause for discipline under three subdivisions of section 19572: (d) inexcusable neglect of duty; (f) dishonesty; and (t) other failure of good behavior. The Board adopted the ALJ's decision.

---

[2] The superior court later modified the April 18 order to allow Williams to carry a CDCR-issued firearm while on duty in the event he completed a domestic violence course. The record does not indicate whether he finished the course. This occurred after his July 21, 2017 termination date and does not affect this appeal.

3

Williams sought to set aside his dismissal by petitioning for a writ of administrative mandate. (Code Civil Proc., § 1094.5.) The court denied the petition and entered judgment on July 19, 2019. Williams appeals.

## DISCUSSION

### 1. *Standard of Review*

The superior court reviews disciplinary decisions of the Board for substantial evidence in light of the whole record. (See *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125, citing *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 217, fn. 31 ["Decisions of the State Personnel Board, an agency of constitutional authority [citation], are reviewed only to determine whether substantial evidence supports the determination, even when vested rights are involved"].) We independently review whether substantial evidence supports the Board's findings without deferring to the superior court's conclusions, resolving any questions of law *de novo*. (*Telish v. State Personnel Bd.*, (2015) 234 Cal.App.4th 1479, 1487.) We review the penalty imposed for abuse of discretion. (*County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1615.)

### 2. *The Civil Service Act Permitted CDCR to Serve the NPT and NOAA Simultaneously*

Federal and state due process standards require permanent civil service employees receive certain procedural protections before termination of employment. (*Skelly v. State Personnel Board, supra*, 15 Cal.3d at p. 215; *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 546 [84 L.Ed.2d 494].) The State Civil Service Act (the "Act") provides the statutory framework for these protections in California. (§ 19570 et seq.) Williams

4

asserts, as he did below, that CDCR violated the Act's disciplinary procedures when it served the NPT and NOAA simultaneously. We review this issue of statutory construction *de novo*. (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1119.)

The Act permits an employer to use an NPT "in lieu of adverse action . . . when the only cause for action against an employee is his or her failure to meet a requirement for continuing employment, as provided in this section." (§ 19585, subd. (a).) Williams contends this language requires CDCR to choose between these two different methods of ending his employment. We do not agree. The permissive phrase "may be used in lieu of adverse action" means only that an employer may serve an NPT under section 19585 when cause does not exist for serving an NOAA under section 19571. The two statutes apply in different situations and serve different purposes. Serving both allowed CDCR and Williams to address two factually related, but legally distinct, grounds for dismissal without wasting time and expense on duplicative administrative proceedings. (See *In the Matter of Novencido* (1998) SPB Case No. 97-2003 NO. 98-10, pp. 8-14 [CDCR could simultaneous seek non-punitive termination and dismissal of employee convicted of battery after domestic violence incident and prohibited from owning or possessing a firearm].)

An NPT is a non-disciplinary separation mechanism that ensures a public employee acquires and maintains the "specified licenses, certificates, registrations, or other professional qualifications, education, or eligibility for continuing employment or advancement" within their class of employment. (§ 19585, subd. (d).) The employer "has no statutory obligation to justify its

5

decision to terminate an employee so long as the statutory prerequisites for a non-punitive termination are satisfied." (*In the Matter of Lannes* (1992) SPB Dec. No. 92-10 Case No. 30141, p. 5.) The employee remains eligible for reinstatement with backpay once they regain the qualification at issue. (§§ 19140, 19585, subds. (g) & (i).) The employer has the option of placing the employee on a leave of absence during this period rather than terminating, demoting, or transferring them. (§ 19585, subd. (b).)

An NOAA, in contrast, focuses on an employee's conduct. The employer seeking to dismiss an employee pursuant to an NOAA must demonstrate the employee engaged in one or more types of misconduct set forth in section 19572 that constitute grounds for adverse action. (See, e.g., § 19572, subds. (g) [drunkenness on duty] & (p) [misuse of state property].) "NPT-type" issues like the loss of a required license or certificate are not among those listed. Once final, a dismissal by adverse action removes the employee's name from the state civil service list, terminates their salary as of the dismissal date, and leaves them ineligible for reinstatement. (§ 19583.1; See *Roe v. State Personnel Bd.* (2004) 120 Cal.App.4th 1029, 1037 [employee could not seek reinstatement as a retiree under section 19140 because he retired pending termination for cause].)

Section 19585's text does not bar CDCR from serving an NPT and NOAA when grounds existed to serve each on its own. Williams losing the right to carry a firearm entitled CDCR to terminate him under section 19585 as a matter of law. His withholding of that information entitled CDCR to discipline him under section 19571. Reading mutual exclusivity into this text would create a dilemma for employers: either serve an NPT and forego disciplining an employee for misconduct under section

6

19571, or serve an NOAA and ignore the employee's failure to meet their job requirements under section 19585. We decline to interpret section 19585 as requiring employers to make this choice, or to adjudicate factually related cases piecemeal.

Even if the Board erred, we do not see how serving the notices together prejudiced Williams. The Act afforded him identical due process rights whether dismissed pursuant to an NPT, NOAA, or both. (§§ 19586 [rehearing of Board decisions], 19588 [right to seek review of Board decision by writ of mandate].) The Act required CDCR to prove the allegations in both by a preponderance of the evidence. (See In the *Matter of Domino* (2019) SPB Dec. No. 19-01 Case No. 18-1948, citing *Lannes, supra*, SPB Dec. No. 92-10 Case No. 30141 ["In an appeal from [an NPT], the agency bears the burden of proving by a preponderance of evidence that the employee failed to acquire or retain the specified license, certificate, registration, or other professional qualifications"]; *In the Matter of Spence* (2017) Case No. 17-0511 NO. 17-02, pp. 14-15 ["In a disciplinary appeal, the appointing power must prove the charges against the employee by a preponderance of the evidence"].)

*3. The Board's Findings on CDCR's Non-Punitive Termination of Williams Is Supported by Substantial Evidence*

Appellant does not dispute the restraining order's firearms prohibition or the requirement that he maintain his firearm rights as a condition of his employment. Rather, he invokes a safe harbor provision for employees experiencing bureaucratic delays while trying to renew a required license, registration, or certificate. (§ 19585, subd. (e) ["[A]n employee who has filed a proper and timely application for renewal of a required license, registration, or certificate shall be considered as having

7

maintained the license, registration, or certificate unless it is subsequently denied, revoked, or suspended"].) Williams analogizes losing his firearms rights to an expired license, and his attempts to regain those rights as trying to "renew" that license under the safe harbor provision.

We decline to so interpret subdivision (e). The restraining order did not revoke "a required license, registration, or certificate" held by Williams. He lost his rights when he behaved in a way justifying a restraining order, not because of a paperwork bottleneck at the Bureau of Firearms or the County Sheriff's Office. We cannot untether the safe harbor provision entirely from the statute's text. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [courts may not "rewrite the statute to conform to an assumed intention that does not appear in its language"].) In addition, subdivision (e)'s safe harbor is limited to those situations in which the employee is not at fault for the underlying delay. (See *In the Matter of Torossian* (2003) SPB Case No. 02-1147 NO. 03-04, pp. 13-14 ["we cannot believe, that in enacting Section 19585, the legislature intended that employees lose their permanent civil service rights . . . solely for reasons that are beyond their control"].) Appellant alone is responsible for the restraining order issued against him.

### 4. *The Board Properly Exercised Its Discretion When It Upheld CDCR's Dismissal of Williams by Adverse Action*

The Board found legal cause for discipline under three subdivisions of section 19572: (d) inexcusable neglect of duty; (f) dishonesty; and (t) other failure of good behavior. The superior court disagreed with the Board's finding of dishonesty because Williams did not affirmatively misrepresent any fact to his employer. It nevertheless denied Williams' petition because

8

substantial evidence supported his dismissal under subdivisions (d) and (t).

Williams argues the superior court's dishonesty finding warrants a wholesale reassessment of his dismissal under *Skelly v. State Personnel Board*, *supra*, 15 Cal.3d 194. We do not agree. Existing precedent does not confine dishonesty to instances in which an employee actively lies, steals, or engages in self-dealing, or as preventing an employer for dismissing an employee for dishonesty when the employee fails to disclose material information in circumstances such as these. (See *In the Matter of Sandoval* (1995) SPB Case No. 35789 NO. 95-15 [DMV employee acted dishonestly when she failed to notify supervisors that she used branch terminal to conduct personal business].) Williams's decision to refrain from reporting the restraining order to his employer constitutes substantial evidence in support of the Board's findings. His status as a correctional officer only highlights his lack of candor. (See *Ackerman v. State Pers. Bd.* (1983) 145 Cal.App.3d 395, 400, quoting *Board of Trustees v. Stubblefield* (1971) 16 Cal.App.3d 820, 824 ["'There are certain professions which impose upon persons attracted to them, responsibilities and limitations on freedom of action which do not exist in other callings. Public officials such as judges, policemen, and school teachers fall into such a category.'"]; *In the Matter of E.A.* (2009) SPB Dec. No. 09-01 Case No. 06-2706, p. 18 ["Peace officers are held to a higher standard of conduct than are non-peace officer employees"].) The Board's findings under subdivision (d) and (t) are likewise supported by substantial evidence.

Our review of the record confirms the Board acted well within its discretion when it sustained Williams' dismissal. (See

9

*County of Siskiyou v. State Personnel Bd.*, *supra*, 188 Cal.App.4th at p. 1615, citing *Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404 [reviewing court will not disturb SPB decision in mandamus proceeding "unless the SPB patently abused its exercise of discretion by acting arbitrarily, capriciously, or beyond the bounds of reason"]; § 19582, subd. (a) ["Hearings may be held by the board, or by any authorized representative, but the board shall render the decision that in its judgment is just and proper"].)

## DISPOSITION

We reverse the judgment to the extent the superior court found the Board's finding of dishonesty under section 19572, subdivision (f) not supported by substantial evidence. We affirm the judgment in all other respects.

CDCR shall recover its costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P.J.


YEGAN, J.

10

James C. Chalfant, Judge
Superior Court County of Los Angeles

_____

Janssen E. Diaz, Staff Counsel, California Correctional Peace Officers Association, for Plaintiff and Appellant.

Michael P. Doelfs, for Real Party in Interest and Respondent California Department of Corrections and Rehabilitation.

No appearance for Respondent California State Personnel Board.