[No. D002052. Fourth Dist., Div. One. Dec. 18, 1985.]

JOHN J. PAULINO, Plaintiff and Appellant, v.
CIVIL SERVICE COMMISSION OF SAN DIEGO COUNTY,
Defendant and Respondent;
JOHN DUFFY, as Sheriff, etc., Real Party in Interest and Respondent.

**COUNSEL**

James M. Gattey and Stephen W. Parrish for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, and Enrique L. Munoz, Deputy County Counsel, for Defendant and Respondent and Real Party in Interest and Respondent.

OPINION

**KREMER, P. J.**—John Paulino appeals a judgment denying his amended petition for writ of mandate against the Civil Service Commission (Commission) of the County of San Diego.

I

Paulino was a permanent employee of the County of San Diego, working as a deputy sheriff since April 1980. On October 8, 1982, Paulino began phase one of field officer training. On October 13 Paulino called in sick.

About 10 a.m. on October 14, Paulino again called in sick. About 10 a.m. that day Paulino also phoned off-duty Deputy Ahern; Paulino said he had compensatory time off and wanted to get together with Ahern. Paulino drove to Ahern's home and accompanied Ahern and Ahern's girlfriend to a shopping mall where they greeted another deputy sheriff. Paulino, Ahern and Ahern's girlfriend then returned to Ahern's home and took the top off Ahern's jeep. About 1 p.m. the three left for a ride in the jeep with Ahern driving. They drove to Lake Calaveras, went "off-roading" and returned to Ahern's home about 5 p.m. Paulino then left.

Paulino worked on October 15 and 16. On October 16 Paulino assured his sergeant he had been legitimately sick on October 14. October 17 and 18 were Paulino's regular days off. Paulino worked on October 19, 20, 21 and 22. Paulino called in sick on October 23. October 24 and 25 were his regular days off. Paulino worked on October 26 and 27. After finishing his shift at 3 p.m. on October 27, Paulino met another deputy for dinner about 9:30 p.m. and had drinks after dinner until about 1 a.m. Paulino called in sick on October 28.

On October 28 Paulino saw his doctor and complained of a cough, congestion, sore throat, hoarseness and general malaise. The doctor diagnosed a severe viral illness in its first few days and prescribed sedative medications with warnings not to drive or drink alcohol. The doctor told Paulino to take it easy and not to work if he did not feel good. During the afternoon Paulino's sergeant tried to contact Paulino without success about a shift change. About 10 p.m. Paulino called his sergeant and learned he would have to work on October 29 and 30, days for which he had earlier been granted compensatory time off. Paulino said he could not work on October 29 and 30 because he possibly had strep throat and his doctor told him to stay in bed through October 31.

About 11 a.m. on October 30, Paulino as cohost began preparing for a Halloween party to begin at 8 p.m. Paulino drank alcoholic beverages during the day and during the party until leaving at 2 a.m.

October 31 and November 1 were Paulino's regular days off. On November 2 Paulino called in sick and saw a doctor, complaining of a sore inflamed throat. The doctor diagnosed pharyngitis. Paulino called in sick on November 3, 4 and 5.

On November 14 Paulino's sergeant directed him to file a deputy's report about all sick leave days he had taken. About 3:45 a.m. on November 15 Paulino wrote a report about his sick leave usage. About noon on November 15, Paulino showed Ahern his report and said Ahern would probably be directed to file a report about his knowledge of Paulino's sick leave usage. Paulino asked Ahern to say in his report Ahern and Paulino met at the cleaners on October 14, talked briefly and left separately in separate cars. Paulino also asked Ahern to exclude from his report the fact Ahern and Paulino spent most of the afternoon of October 14 together in Ahern's jeep and went off-roading together.

On November 29 Paulino prepared a supplemental report about his sick leave usage. On November 30 Paulino's sergeant interviewed Paulino with Paulino's attorney present.

## II

On January 31, 1983, the sheriff terminated Paulino's employment for inefficiency, dishonesty, improper use of sick leave, conduct unbecoming an officer or county employee and failure of good behavior.

After an administrative hearing the Commission affirmed Paulino's termination. The Commission found Paulino was guilty of inefficiency, dishonesty, unbecoming conduct and failure of good behavior.

Paulino went by mandate to the superior court. Exercising its independent judgment, the court after hearing denied Paulino's amended petition for mandate. The court found the Commission's findings were supported by the weight of the evidence and the discipline imposed was within the Commission's discretion. The court entered judgment favoring the Commission. Paulino appeals.

## III

The Commission determined Paulino was "guilty of inefficiency in that he reported ill falsely on October 14, 1982 and exacerbated his illness on October 30, 1982 by attending a party for fifteen hours despite his doctor's directions to rest. Such conduct resulted in absences from work and a delay or loss of time in his training and the expenditure of a substantial amount

of time over a one and a half month period by his sergeant investigating his conduct." The court found the Commission's determination was supported by the weight of the evidence. Paulino contends the court's finding is not supported by substantial evidence.

Paulino asserts there was no evidence supporting the findings he exacerbated his illness by attending the Halloween party; his training was delayed; and the sergeant's investigation took a substantial amount of time. Paulino also asserts there was no evidence he was any more inefficient than any other employee absent from work for any reason whatsoever. ■ However, substantial evidence in the record supports the finding Paulino was guilty of inefficiency.

An employee's excessive absences from work, even for legitimate reasons, may support a finding of inefficiency. (*California Sch. Employees Assn.* v. *Jefferson Elementary Sch. Dist.* (1975) 45 Cal.App.3d 683, 689 [119 Cal.Rptr. 668].) After October 8 Paulino completed only eleven days of his phase one patrol training and was absent nine days. As a result of his absences, Paulino was several days behind in his training. There was conflicting evidence as to whether Paulino had to restart his phase one training because of his excessive absences. Further, Paulino's sergeant testified it took him about one and one half months to complete the investigation of Paulino's conduct and get an accurate picture of what actually occurred; many times the sergeant had to arrange for interviews on his time off or after staff meetings, delaying performance of his normal supervisorial duties in answering deputies' day-to-day questions. Moreover, Paulino falsely reported ill on October 14 and called in sick on October 28 after drinking until the early morning hours. This record amply supports the finding of inefficiency.

IV

The Commission determined Paulino was "guilty of dishonesty in that he falsely reported ill for October 14, 1982, and falsely implied in his Deputy's Report of November 15, 1982, that he was not accompanying Deputy Ahern to the cleaners, when in fact Employee had accompanied Deputy Ahern from Deputy Ahern's house in Deputy Ahern's vehicle to the cleaners. Employee also falsely stated in his report of November 15, 1982, that he had a brief conversation with Deputy Ahern at the cleaners and left to go home, when in fact he and Deputy Ahern and Deputy Ahern's girlfriend returned to Deputy Ahern's apartment, removed the top from Ahern's Jeep, and went riding on and off road from 1:00 to 5:00 p.m. that day. Employee is further guilty of dishonesty by omitting any mention of most of his activities for October 14, 1982 with Deputy Ahern in his November 15, 1982

report and implying in his November 29, 1982 report that he only went for a short drive with Deputy Ahern for a very short amount of time, and then went home, when in fact, employee went for a drive with Deputy Ahern to the Lake Calavares area and then went off-roading for some time before returning home, the whole excursion taking approximately four hours. Employee was further dishonest in his interview with Sgt. Alschbach on November 30, 1982 when he stated that he did not remember telling Deputy Ahern that he had a comp day off on October 14, 1982, when in fact he did so state, and when he stated he spent approximately only two hours on the 'drive' to Lake Calavares (including off-roading), when in fact it took four hours. Such statements and omissions were made by Employee with an intent to deceive his department with regard to the condition of his health." The court found the Commission's determination was supported by the weight of the evidence. Paulino contends the court's finding is not supported by substantial evidence.

In his November 15 report Paulino wrote: "At approximately 1300 hrs. on 10-14-82 I was seen by a Deputy at Mall. It just so happens that this mall is where my cleaners is that I take my uniforms to be cleaned. Which I was in the process of during (*sic*) when I was there. I was picking up a cleaned uniform for work. Also on 10-14-82 I was seen with Deputy Ahern and his girl friend. Deputy Ahern also takes his uniforms to this cleaners. We had a brief conversation and I left to go home."

In his supplemental November 29 report Paulino wrote: "On the 14th of Oct. I remained home until about 12:30 p.m. when I went to Deputy Ahern's house. There I met with Ahern and his girlfriend Lisa Lach, and we went in his Jeep to Pick up uniforms at the Broadway cleaner located at 312 West Broadway in Vista. From there we went for a drive to Lake Callaveras (*sic*) then returned to his apartment, and I went home shortly thereafter, I was having difficulty with my sore throat, which was swollen and getting worse all the time."

In his November 30 interview with his sergeant, Paulino said he did not remember telling Ahern he had a compensatory day off; Paulino also said the drive to Lake Calaveras including the off-roading lasted only about two hours.

Paulino asserts there was no substantial evidence to support the findings he falsely reported ill on October 14; his November 15 report showed his dishonesty by omitting most of his October 14 activities; his November 15 report falsely implied he did not accompany Ahern to the cleaners on October 14; his November 15 report falsely stated he had a brief conversation with Ahern at the cleaners on October 14 and left to go home; his November

29 report falsely implied he only went for a short drive with Ahern on October 14; he dishonestly told his sergeant in his November 30 interview he did not remember telling Ahern on October 14 he had a compensatory day off; and during his November 30 interview he dishonestly said the drive to Lake Calaveras lasted about two hours. ■ However, substantial evidence in the record supports the finding Paulino was guilty of dishonesty. To deceive his employer, Paulino made false and misleading statements in his oral and written reports to his supervisors about his health and sick leave usage. Paulino also omitted unfavorable material facts from his reports.

On October 14 Paulino called in sick. After calling in sick, Paulino told Ahern he had compensatory time off and wanted to get together. Paulino then went with Ahern and Ahern's girlfriend to the shopping mall and later drove around with them in Ahern's jeep for four hours, including off-roading. In his November 29 report Paulino said his throat was sore and swollen on October 14 and he had difficulty talking. Ahern told the sergeant Paulino appeared all right on October 14. Later Ahern testified Paulino did not complain about any health problems on October 14 and did not appear to have trouble talking.

On November 14 the sergeant asked Paulino to write a report detailing his sick leave usage. Paulino wrote the report on November 15. Paulino's November 15 report did not mention his afternoon ride on October 14 with Ahern and Ahern's girlfriend. The November 15 report's wording appears to suggest, contrary to the truth, Paulino did not accompany Ahern and Ahern's girlfriend to the cleaners but instead happened to encounter them there, spoke briefly and left separately. Such interpretation of the November 15 report showing Paulino's intent to conceal or misrepresent certain events occurring on October 14 is consistent with statements Paulino made when showing Ahern his November 15 report and asking Ahern to corroborate his version of his October 14 activities. Paulino said his November 15 report included certain things and omitted others. Paulino also said his report stated he and Ahern arrived at the cleaners in separate cars. Further, Paulino asked Ahern to omit mention of off-roading in Ahern's report.

Paulino's supplemental November 29 report omitted mention of the October 14 off-roading. The November 29 report did not specify the duration of the October 14 afternoon drive; however, the report's wording implies the trip's duration was minimal. Further, the November 29 report's statement Paulino went with Ahern to the cleaners on October 14 is inconsistent with the November 15 report's implication Paulino and Ahern met by chance at the cleaners.

In his November 30 interview with the sergeant, Paulino minimized the duration of the October 14 drive and avoided discussing the off-roading.

Paulino, Ahern and Ahern's girlfriend left Ahern's home for Lake Calaveras about 1 p.m. and returned about 5 p.m. Paulino told his sergeant in the November 30 interview the drive lasted only about two hours. Further, on October 14 Paulino told Ahern he had a compensatory day off. In the November 30 interview Paulino told his sergeant he did not remember making such statement to Ahern. The Commission reasonably disbelieved Paulino's assertion of a memory lapse.

This record amply supports the finding of dishonesty.

## V

The Commission found Paulino was "guilty of conduct unbecoming an officer or Employee of the county, and failure of good behavior by committing the acts or omissions set forth with regard to inefficiency and dishonesty above." The substantial evidence supporting the findings of inefficiency and dishonesty also supports the findings of unbecoming conduct and failure of good behavior.

## VI

The Commission determined Paulino's acts constituted grounds for termination. The court found the discipline imposed was within the Commission's discretion. Paulino contends the court's finding is erroneous as a matter of law and unsupported by any substantial evidence. He asserts the evidence showed he did not suffer any prior discipline; the sheriff and the Commission did not follow recognized progressive discipline standards for county employees, including sheriff's deputies; and there was no reason for the great disparity between the penalty of dismissal imposed for his first offense of a minor charge and the Commission's actions in other cases involving equally severe or more severe misconduct.

 The Commission's determination as to penalty will not be disturbed absent a manifest abuse of discretion. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 217-218 [124 Cal.Rptr. 14, 539 P.2d 774].) Neither the trial court nor this court may substitute its discretion for the Commission's as to the degree of penalty imposed on Paulino. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 404-405 [134 Cal.Rptr. 206, 556 P.2d 306].) We may not interfere with the Commission's imposition of penalty merely because in our evaluation of the circumstances the penalty of dismissal may appear too harsh. (*Macfarlane* v. *Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 84, 91 [330 P.2d 769]; *Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901].) Discretion is abused where the penalty imposed exceeds the bounds of reason; the fact reasonable minds may differ

as to the propriety of the penalty supports a finding the Commission acted within its discretion. (*Ackerman* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 395, 401 [193 Cal.Rptr. 190].) In determining whether the penalty of termination was excessive as a matter of law, the overriding considerations are the extent of harm to the public service resulting from Paulino's conduct or the likelihood such conduct, if repeated, would result in such harm; other considerations are the circumstances surrounding Paulino's misconduct and the likelihood of its recurrence. (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at p. 218.)

In deciding Paulino's petition for mandate, the superior court judicially noticed the county's "Progressive Discipline Resource Book" and the Commission's minutes of proceedings in similar cases. ■ The court may properly consider evidence of the county's policies regarding penalties; however, such policies do not circumscribe the Commission's discretion in imposing a penalty. (*Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 554 [102 Cal.Rptr. 50].) Under the county's discipline guidelines, a range of punishment from "reprimand to removal" is appropriate for the first offense of "falsification, misstatement, or concealment of material fact in connection with any official record."

We have examined appellate cases determining a penalty of termination to be clearly excessive and find them not controlling here. In *Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d 194, a doctor with a "long and honorable medical career" was dismissed from the State Department of Health Care Services for intemperance, inexcusable absence without leave and failure of good behavior during duty hours causing discredit to the Department. The punitive dismissal was based on the doctor's conduct in extending his lunch break on numerous occasions beyond the allotted one hour, generally by five to fifteen minutes, and in twice leaving the office without permission for several hours. The Supreme Court found the record lacked evidence directly showing the doctor's minor deviations from his prescribed time schedule adversely affected the public service. The court held: "considering all relevant factors in light of the overriding concern for averting harm to the public service, we are of the opinion that the Board clearly abused its discretion in subjecting petitioner to the most severe punitive action possible for his misconduct. [¶] . . . the penalty of dismissal was clearly excessive and disproportionate to the misconduct on which it was based." (*Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d at p. 219.)

In *Blake* v. *State Personnel Bd.*, *supra*, 25 Cal.App.3d 541, a supervising deputy labor commissioner with 19 years exemplary service was dismissed for discourteous treatment of other employees. After a social evening of dinner and drinks outside of duty hours, the dismissed employee pointed a

gun at a fellow employee perceived to be a romantic rival. A divided Court of Appeal said the penalty of dismissal was clearly excessive for this single incident because the record lacked direct testimony of adverse affect on the work relationship and contained evidence the employee apologized for his behavior the next day and such misconduct was not likely to recur. The court further noted the State Personnel Guide to Employee Discipline suggested a range of punishment from "warning" to "letter of reprimand" for the first offense of discourteous treatment of other employees. (*Id.* at pp. 553-554.)

Unlike the situation here, neither *Skelly* nor *Blake* involved intentional dishonesty by a peace officer.

A deputy sheriff's job is a position of trust. A deputy sheriff is held to the highest standards of behavior. His honesty and credibility are crucial to proper performance of his duties. Dishonesty in matters of public trust is intolerable. (*Ackerman* v. *State Personnel Bd., supra,* 145 Cal.App.3d at p. 400.) Paulino tried to deceive his employer about his health and sick leave usage. He falsely reported ill on October 14. His later oral and written reports about his October 14 activities contained false and misleading statements and omitted material facts. He asked another deputy to corroborate his story. Dishonesty is not an isolated act; it is more a continuing trait of character. (*Id.* at p. 399.) False statements, misrepresentations and omissions of material facts in official reports, if repeated, were likely to result in harm to the public service. Under the county's progressive discipline guidelines, dismissal was within the range of punishment for the first offense of dishonesty. Further, on this record dismissing Paulino did not exceed the bounds of reason. The Commission's imposing the penalty of termination was not excessive as a matter of law. The court properly denied mandate.

### DISPOSITION

The judgment is affirmed.

Wiener, J., and Kintner, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.