Filed 9/17/14  Gore v. San Diego County Civil Serv. Com. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| WILLIAM D. GORE, as Sheriff, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO COUNTY CIVIL SERVICE COMMISSION,<br><br>    Defendant and Respondent;<br><br>AARON AGUILERA,<br><br>    Real Party in Interest and Respondent. | D064260<br><br>(San Diego County<br>Super. Ct. No. 37-2012-00103131-CU-WM-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Reversed.

Thomas E. Montgomery, County Counsel, and William H. Songer, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Bobbitt, Pinckard & Fields, Bradley M. Fields and Amy R. Gordon, for Real Party in Interest and Respondent.

The San Diego County Sheriff's Department (the Sheriff) terminated real party in interest Aaron Aguilera for allegedly telling a lie to his supervisor during questioning concerning a traffic stop in which he was involved. Specifically, it was alleged that he lied when he told his supervisor that the vehicle that was stopped was already hooked up to a tow truck when the owner of the vehicle, the driver's father, arrived at the scene and requested that the vehicle be released to him. The San Diego Civil Service Commission (the Commission) thereafter reinstated Aguilera, concluding there was insufficient evidence to justify a termination, even though it found he was untruthful. The Sheriff filed a petition for writ of mandate, which the trial court denied, upholding the Commission's decision.

The Sheriff appeals, asserting (1) the Commission abused its discretion in reinstating Aguilera after it found he was untruthful, and (2) the trial court erred in excluding evidence of a second "lie" Aguilera told his supervisor based upon the court's conclusion it was the result of an unlawful interrogation under Government Code[1] section 3303 (the Act). We conclude the Commission abused its discretion when it reinstated Aguilera despite finding he lied to his supervisor. Accordingly, we reverse the judgment.

---

[1]     All further undesignated statutory references are to the Government Code.

2

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Traffic Stop*

On March 11, 2010, San Diego County Sheriff's Deputy Siegfried stopped a vehicle driven by Gilberto Mendez (Gilberto)[2] in Imperial Beach for a vehicle code violation. As a result of that stop, Gilberto was arrested for possession of a dangerous weapon (brass knuckles). Aguilera and his partner, Deputy Sheets, were called to the scene as back-up deputies. Aguilera was responsible for overseeing the towing of the vehicle Gilberto was driving.

Gilberto was accompanied by two females that evening. When deputies refused to allow either of the females to take the vehicle, one of them called Gilberto's father, Ruben Mendez (Ruben), who was the registered owner of the vehicle.

Ruben arrived at the scene around midnight. Ruben identified himself to Aguilera as the registered owner of the vehicle, verified his identity and asked to take possession of the vehicle. Aguilera refused, and the vehicle was then towed.

B. *Events Following Towing Incident*

1. *March 19 conversation*

On March 15, 2010, Ruben sent Sergeant Hartman, Aguilera's supervisor at the Imperial Beach station, a one-page letter complaining both about his son's arrest and the towing of the vehicle.

_____

[2] In the interests of clarity, we refer to Gilberto Mendez and his father by their first names. We intend no disrespect.

3

Sergeant Hartman received Ruben's complaint letter on March 18, 2010. Following his usual practice of trying to informally resolve a complaint, Sergeant Hartman contacted Aguilera on March 19, 2010 to ask what happened. Sergeant Hartman testified they were just informal questions.

At this stage of assessing the complaint, Sergeant Hartman did not believe Aguilera had done anything wrong. He just wanted to know what had happened. As Sergeant Hartman explained: "I'm going to give [my deputies the] opportunity to tell me what happened before I meet with someone from the public on a complaint. . . . I want to know what happened with the contact."

Sergeant Hartman asked Aguilera whether Ruben was at the scene before the tow truck arrived. Aguilera recalled that the tow truck was there before Ruben requested to have the car released, and he told Sergeant Hartman that the tow truck was there first. However, it is undisputed that Ruben was there before the tow truck arrived.

Aguilera told Sergeant Hartman that he did not release the car to Ruben because, when Ruben arrived at the scene, the car was "already hooked up to the truck. It was already on the truck."

2. *April 7 questioning*

On April 1, 2010, Ruben filed a claim with the County of San Diego (County) seeking reimbursement of the towing expense. On April 7, 2010, the claim was "assigned to [Sergeant Hartman] for investigation." The same day, Sergeant Hartman once again talked to Aguilera, asking him "if he was positive the car was hooked up when Ruben Mendez arrived." Sergeant Hartman did not advise Aguilera he was under

4

investigation or inform him of his rights. Aguilera once again "confirmed it saying that the truck had been hooked up . . . [the vehicle] was already in the back of the truck. That's why he didn't release the vehicle." Aguilera invited Sergeant Hartman to "go check" the video from the scene, as he believed it would support his statement.

When Sergeant Hartman checked the video, however, it revealed that the car was not hooked up to the tow truck when Ruben arrived. In fact, Ruben arrived approximately 10 minutes before the tow truck even arrived on scene. Sergeant Hartman thereafter referred the case to the Sheriff's Internal Affairs Unit (IA) for a formal investigation.

C. *Formal Investigation by the Sheriff*

IA conducted an investigation, which included an interview of Aguilera. The IA report states that Sergeant Hartman explained to Aguilera that Ruben Mendez told him the vehicle was not hooked up, and the tow truck was not even present when he arrived. Aguilera told Hartman, "When he (Ruben Mendez) got there, the car was already hooked up." Aguilera told the IA investigator: (1) "he asked me, you know, was, was the vehicle towed. Did the vehicle already get towed before he [car owner] got there? And, I told him, I go, 'no' but then I said 'yes, but no'; (2) "I, I, I I really don't recall it, exactly what he asked me. I know that there was an issue with the tow, and he asked me if the tow . . . if he [car owner] was there before the tow truck got there. Something like that. [¶] . . . . [¶] My. my response at, at, I told him, 'No.' I told him 'No, but yes' based on what we were arguing about"; (3) "Now, if this, if I interpreted [this] wrong to Sergeant Hartman as far as the tow truck being hooked up and everything [*sic*]. When I mean

5

hooked up, I mean they're already started doing what they're doing. [¶] . . . [¶] So, I'm not denying the fact that there, he was there. And the, maybe the way I portrayed it to Hartman was that the guy was nowhere in sight. The tow truck came and hooked it up, and that was that. But that's not, that's not what my intention was to instill in Hartman if that's what happened"; (4) "[Q]: So you told Sergeant Hartman that the vehicle was already hooked up before Ruben Mendez arrived? [¶] [A]: I don't recall tell . . . I, I, I think that he probably misunderstood what I was saying. What I was saying is the car was hooked up prior to our discussion about me not towing the car. . . . [T]he bed was already up, and so I figured it's hooked; and (5) "I told him, 'Yes' it, that, that the tow truck was already hooked up before all this happened. But I, I didn't mean it that way. I meant, what I meant was, when we started getting into an issue about the vehicle, the tow truck already arrived so I consider it hooked up."

The IA report was submitted up the chain of command for a disciplinary recommendation. The first reviewer, Lieutenant Ybarrondo of the Imperial Beach Station, concluded there was insufficient basis to conclude that Aguilera was dishonest, and recommended a written reprimand for violating the Department's towing policy. Lieutenant Ybarrando's recommendation was forwarded to Captain Myers, who upheld Ybarrando's recommendation. However, the next officer up the chain of command, Commander Mike Barletta, reached the opposite conclusion, reinstated the untruthfulness finding, and recommended that Aguilera be terminated.

On March 1, 2011, the Sheriff served Aguilera with a termination order based on dishonesty and acts incompatible with or inimical to the public service. Aguilera thereafter appealed the termination to the Commission.

D. *Commission Hearing*

The Commission is the County administrative body responsible for final disciplinary decisions. (San Diego County Charter, § 904.1.) The Commission held a prehearing conference on June 14, 2011, at which Aguilera, through counsel, moved to exclude the statements Aguilera made to Sergeant Hartman, which were the sole basis for the finding of dishonesty. Aguilera contended that the statements were made during an unlawful "interrogation" under section 3303. The Commission received extensive legal briefing from both sides on the admissibility of the statements before holding its full administrative hearing on June 30, 2011.

After hearing all the evidence, the Commission summarized Aguilera's testimony in this manner:

> "The issue for Employee to address was simple. 'Was Ruben Mendez there or not when the CAR was attached to the tow truck?' *Employee's answer was untruthful on both occasions.* Based on the character and quality of his testimony and his demeanor in its presentation, Employee's tortured portrayal of the issue as being ambiguous and needing prolonged explanations was an unsuccessful attempt to obfuscate." (Italics added.)

The Commission concluded that: (1) both the March 19[3] and April 7 statements were admissible; (2) Aguilera had made untrue statements on both March 19, 2010 (when he said that the car was hooked up, when in fact it was not) and on April 7 (when he repeated his explanation in response to Sergeant Hartman's inquiry after Mendez filed a claim); (3) Aguilera knew his statements were untrue; and (4) that "[a] confirmed act of untruthfulness has a sustained and substantial impact on a Deputy Sheriff's ability to discharge [his] duties."

E. *Aguilera Files a Writ with Trial Court*

Aguilera filed a writ with the trial court to challenge the Commission's conclusions. The issue raised in Aguilera's writ was whether the Commission properly admitted evidence about the conversations between Deputy Aguilera and Sergeant Hartman. On February 2, 2012, the trial court ruled that the evidence of Aguilera's March 19, 2010 statement was admissible because Sergeant Hartman's discussion with Aguilera was routine in the normal course under section 3303, subdivision (i). However, the trial court ruled that evidence of the second statement on April 7, 2010 was not admissible because Aguilera was not informed of his rights under the Act before that interrogation that was as a result of a formal complaint. The court remanded the matter to the Commission for further reconsideration in light of its evidentiary ruling.

---

3    There are some documents which refer to this contact as having occurred March 18, 2010. The shift both Sergeant Hartman and Aguilera were working began March 18 and ended March 19.

F. *Remand Back to Commission*

The Commission held a meeting on May 31, 2012, to comply with the court's order to reconsider its decision in light of the trial court's ruling to exclude Aguilera's April 7, 2010 statements. The Commission declared that it would not consider Aguilera's April 7 statements for "any purpose in reaching the decision in this case." However, at the May 31, 2012 hearing, the Commission did not receive any evidence and did not alter, address or amend its prior factual findings. That hearing was solely to consider additional argument.

On June 6, 2012, the Commission concluded, "After considering the arguments made by both parties it is the conclusion of the Hearing Officer that there is insufficient evidence to support the termination without the statements which were suppressed." The Commission ordered the Sheriff to reinstate Aguilera, despite its unchanged finding that Aguilera was untruthful on March 19, 2010.

G. *The Sheriff's Writ*

The Sheriff then filed the writ petition from which this appeal arises, challenging the Commission's decision to reinstate Aguilera. The trial court heard this matter on May 3, 2013, and denied the writ, finding that, although one incident of lying is sufficient to support a deputy sheriff's termination, termination "is not always mandated."

In doing so, the court first noted that the Commission's decision is reviewed for an abuse of discretion. The court also noted that the Commission's findings were consistent with the suppression order. As to the first statement to Sergeant Hartman, the court relied on the fact that Aguilera "asserted throughout that even though the statement to Hartman

9

was factually incorrect, that there was no attempt to deceive; therefore, there was no lie to subject him to termination."

The court also found that "there is support for the factual finding that as to the March 1[9], 2010 comments to Hartman, there is insufficient evidence to support Aguilera's termination. The disputed evidence shows that the entire contact with Hartman took place later in the day, which lasted approximately a minute. Hartman testified they were just informal questions."

The court found that "[t]he Commission could have believed Aguilera's explanation . . . as to why he gave the incorrect answer . . . ." The court also noted Aguilera's testimony that he did not have a great understanding of towing procedures. The court concluded that, "Even with the testimony from Commander Barletta that the integrity of the department employees is imperative, there was no evidence that Aguilera would continue to err and blemish the department."

The court noted that "[a]ltough Sheriff is correct that one instance of lying may be sufficient to support termination . . . , it is not always mandated. Here, the hearing officer found insufficient evidence when the narrower review was given. The commission's findings were supported by substantial evidence. The Court denies Sheriff's request to vacate the Commission's Amended Findings."

DISCUSSION

I. *STANDARD OF REVIEW*

The Sheriff's petition in this case challenged only the level of discipline imposed on remand. Thus, we conduct a de novo review of the level of discipline imposed, giving

10

no deference to the trial court's determination. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46; *Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 227 (*Talmo*).) We review the level of discipline imposed for a clear abuse of discretion. (*Talmo, supra,* at p. 226*; Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 504.) "In considering whether [an abuse of discretion] occurred in the context of public employee discipline, we note that the overriding consideration in these cases is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 218.)

## II. *ANALYSIS*

### A. *The Commission Committed an Abuse of Discretion by Reinstating Aguilera After Finding that He Was Dishonest*

When the Commission ordered Aguilera reinstated with full back pay and benefits, it did not exonerate him of the charges of dishonesty. In fact, as discussed, *ante*, the Commission found that "[Aguilera] made untrue statements when he told Sergeant [Hartman] on March 1[9]th . . . , 2010 that [Ruben] was not at the scene of the incident when the CAR was attached to the tow truck." It further found that "[Aguilera] *knew* that the statements were untrue. Even if [Aguilera] was mistaken about the towing policy, this does not account for [his] statement that [Ruben] was not present when the CAR was attached to the tow truck." (Italics added.) The Commission made the additional

11

observation that Aguilera's testimony and demeanor represented a "tortured portrayal" and "unsuccessful attempt to obfuscate."

The Commission labeled Aguilera dishonest and yet returned him to a position that demands rigorous honesty. This was an abuse of discretion. Case law in California makes clear that a dishonest law enforcement officer should not remain a public employee: "A deputy sheriff's job is a position of trust and the public has a right to the highest standard of behavior from those they invest with the power and authority of a law enforcement officer. Honesty, credibility and temperament are crucial to the proper performance of an officer's duties. *Dishonesty is incompatible with the public trust.*" (*Talmo, supra,* 231 Cal.App.3d at p. 231, italics added.)

Numerous cases have found that acts of dishonesty support termination of a peace officer's employment. (*Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 882; *Ackerman v. State Personnel Bd.* (1983) 145 Cal.App.3d 395, 401; *Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 761; *Haney v. City of Los Angeles* (2003) 109 Cal.App.4th 1, 12; *County of Santa Cruz v. Civil Service Commission of Santa Cruz* (2009) 171 Cal.App.4th 1577, 1582; see *Department of Corrections & Rehabilitation v. California State Personnel Bd.* (2007) 147 Cal.App.4th 797, 808.)

Because law enforcement officers are held to the highest standards of public trust, even a single act of dishonesty by a peace officer warrants termination. (*Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 972 [termination upheld for deputy who lied about use of sick leave]; *Kolender v. San Diego County Civil Service Com.* (2005) 132

Cal.App.4th 716, 723 (*Berry*) [The Commission abused its discretion by reinstating deputy who lied to cover up another deputy's abuse of an inmate.].)

In *Berry,* the Commission ruled that the deputy who lied should be reinstated because he eventually recanted the lie and told the truth. (*Berry, supra,* 132 Cal.App.4th at p. 720.) The trial court found that reinstating the dishonest deputy was an abuse of discretion even though the deputy eventually told the truth, and this court upheld that decision on appeal. (*Id.* at pp. 722-723.)

Similarly, in *Kolender v. San Diego County Civil Service Commission* (2007) 149 Cal.App.4th 464 (*Gant*), the Sheriff demoted an unsworn employee for incompetence, and the Commission thereafter reduced the penalty from a permanent to a temporary demotion. On appeal we concluded that, because of "the possibility of harm to the public service from the employee's conduct, in light of all the circumstances surrounding the misconduct and the likelihood of recurrence" (*id*. at p. 473), the Commission abused its discretion by reducing the employee penalty from a permanent to a temporary demotion. (*Id.* at p. 474.)

Here, the Commission specifically found that Aguilera lied during the March 19, 2010 discussion with his superior officer. However, without explanation, the Commission concluded that evidence of a lie was insufficient to support termination. This was an abuse of discretion, particularly given that Aguilera was a peace officer.

The "overriding consideration" in determining whether the public employee discipline decision is an abuse of discretion "is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[harm] to the public service.'"

13

(*Skelly v. State Personnel Board, supra,* 15 Cal.3d at p. 218.) A deputy sheriff with even a single proven act of dishonesty on duty is no longer able to function as a peace officer. Indeed, as the Commission itself noted, "A confirmed act of untruthfulness has a sustained and substantial impact on a Deputy Sheriff's ability to discharge the duties of his position in the Sheriff's Department." A deputy lying to his superior officer has a high likelihood of harming the public service.

In denying the Sheriff's writ petition, the trial court found that that the "Commission *could have* believed Aguilera's explanation to [the Internal Affairs officer] as to why he gave the incorrect answer." (Italics added.) However, that statement ignores what the Commission actually found: Aguilera's March 19th statement was not true and Aguilera *knew* it was not true. Thus, according to the Commission's own findings, it was not an error, it was a lie.

In its formal findings, the Commission boiled the case down to a single, simple question: "Was Ruben Mendez there or not when the CAR was attached to the tow truck?" Aguilera's answer to that question, repeatedly, was untruthful. Aguilera compounded his initial deceit by persistently (in his IA interview and administrative hearing) arguing that the term "hooked up," when talking about a car attached to a tow truck, is "ambiguous and subject to different interpretations needing prolonged explanations." The Commission described Aguilera's theory as a "tortured portrayal of the issue" and "attempted obfuscation."

14

The Commission did not, on remand, rescind its factual findings or make any exculpatory findings. Thus, the record does not support the trial court's speculation that the Commission may have "believed" Aguilera's explanation.

The trial court also found that "[t]his case is more similar to *Kolender v. San Diego County Civil Service Com.* (*Salenko*) (2005) 132 Cal.App.4th 1150 [*Salenko*], relied on by Aguilera, rather than [*Berry, supra,*] 132 Cal.App.4th 716." This conclusion was error.

In *Salenko,* the Commission ordered an officer demoted in lieu of termination after making factual findings that an officer had been sloppy in his report writing but *had not been dishonest.* (*Salenko, supra,* 132 Cal.App.4th at p. 1155.) In reviewing the Commission's factual findings, the Court of Appeal "deferr[ed] to the trier of fact on issues of credibility, and concluded substantial evidence supported the hearing officer's decision to credit Salenko's explanation for his inaccurate and unprofessional report." (*Ibid.*)

Here, by contrast, the Sheriff does not challenge the Commission's factual findings or its determination on issues of credibility. In fact, the Sheriff *relies* on the Commission's factual findings that Aguilera lied to his supervisor and thereafter engaged in "an unsuccessful attempt to obfuscate." In contrast to *Salenko*, where the Commission made *exculpatory* factual findings regarding the officer's credibility, here the Commission made findings that directly attack Aguilera's credibility.

Moreover, because the entire administrative record and decision will be available in any future *Pitchess*[4] motion, Aguilera can no longer effectively serve as a Sheriff's deputy. A future record request will yield the deputy's disciplinary record, including the termination order and Commission decisions. A deputy with this history of untruthfulness, evasiveness or obfuscation is permanently compromised as a witness in any future judicial proceedings because any opposing party will readily be able to impeach the witness with the prior dishonest statement.

Where credibility is an essential characteristic of a profession, an employee who lacks credibility cannot perform his duties; this inherently harms the public service. The Commission found such harm here. The public has a right to expect that peace officers will be truthful and the Sheriff unconditionally expects that its "employees will always answer questions . . . truthfully and to the fullest extent of their knowledge." Notwithstanding the public's expectations and the Sheriff's standards, the Commission here reinstated Aguilera without any penalty, after finding that he knowingly lied to his supervisor. The Commission's decision is a clear abuse of discretion. Dishonesty in

---

4    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 provided for the discovery of peace officer personnel records. The Legislature thereafter enacted Evidence Code sections 1043 and 1045 to place specific limitations and procedural safeguards on the disclosure of peace officer personnel files. (*See People v. Breaux* (1991) 1 Cal.4th 281, 311-312.)

16

matters of public trust cannot be tolerated.  (*Paulino v. Civil Service Com., supra,* 175

Cal.App.3d at p. 972.)[5]

DISPOSITION

The judgment is reversed.  The Sheriff shall recover its costs on appeal.


NARES, Acting P. J.

WE CONCUR:


HUFFMAN, J.


MCDONALD, J.

---

[5]     Based upon our holding, we need not address the Sheriff's contention that the court erred in excluding evidence of the April 7 statements.