Filed 10/3/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| COUNTY OF LOS ANGELES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CIVIL SERVICE COMMISSION OF THE COUNTY OF LOS ANGELES,<br><br>     Defendant;<br><br>MARK MONTEZ,<br><br>     Real Party in Interest and Appellant. | B282133<br><br>(Los Angeles County Super. Ct. No. BS158562) |

     APPEAL from a judgment of the Superior Court of Los Angeles County.  James C.  Chalfant, Judge.  Affirmed.
     The Gibbons Firm, Elizabeth J. Gibbons for Real Party in Interest and Appellant.
     Peterson Bradford Burkwitz, Avi Burkwitz and M. G. Kwon, for Plaintiff and Respondent.

_____

Los Angeles County Sheriff's Deputy Mark Montez failed to report and lied about the unreasonable use of force by another deputy against an inmate at the Men's Central Jail in Los Angeles (the jail). The Sheriff's Department discharged Montez, but after an administrative hearing the Los Angeles County Civil Service Commission (the Commission) reduced his discharge to a 30-day suspension without back pay. The county petitioned the superior court for a writ vacating the Commission's decision and upholding Montez's discharge. The court, Judge James C. Chalfant presiding, found that the Commission's decision was unsupported by its own findings. The court accordingly issued a writ ordering the Commission to set aside its decision and reconsider the matter.

We conclude that Montez's misconduct was an inexcusable neglect of duty that harmed the Sheriff's Department by compromising the public's ability to trust it, and the Commission abused its discretion by reducing Montez's punishment. Therefore, we affirm the trial court's order.

## BACKGROUND

The facts as found by the Commission are undisputed for purposes of these proceedings.

On September 27, 2010, Dequan Ballard, an inmate in the jail, stole items from a commissary cart. The theft was reported to Deputy Omar Lopez, who informed Montez.

Lopez and Montez took Ballard to an elevator landing to strip search him for the stolen items. Lopez searched Ballard while Montez monitored the hallway to provide security against other inmates interfering or Ballard becoming violent. During the search, Lopez issued verbal commands to Ballard and struck him multiple times with his fist. Montez was aware of the

2

assault, but neither participated in it nor knew ahead of time that it would take place.

After Ballard returned to his dormitory he confronted and threatened the commissary employee who had reported the theft.

Lopez thereafter took Ballard to a control booth area just outside the dormitory. Lopez papered over a window in the dormitory door to prevent inmates inside from seeing into the control booth, and Christina Ramirez, a civilian custody assistant, instructed the inmates to lie down in their bunks to prevent them from watching the interaction between Lopez and Ballard. Lopez then shoved Ballard face first into a wall, causing "severe bleeding from his face, nose, and mouth areas" and bloodying his clothes, the wall, and the floor.

Lopez and Tianna Tipton, another civilian custody assistant, retrieved clean clothes for Ballard and summoned a trustee to clean the blood off the wall and floor. When Lopez escorted Ballard back to his dorm, Tipton kicked his bloody clothes down the hallway.

Montez was not present during the second assault but arrived shortly thereafter and had a brief conversation with Lopez outside the control booth, and at one point stood in front of the bloody wall. The Sheriff's Department concluded that he then became aware of the blood on the wall and thus of the second assault.

Montez failed to report either incident.

The Sheriff's Internal Affairs Bureau (IAB) investigated the incidents. When interviewed, Montez stated he could hear Lopez's commands to Ballard in the elevator landing but heard no indications of an assault. He denied observing any injuries to Ballard and denied observing blood on the control room wall, and

when shown a video of himself and Lopez standing in the control room area, Montez stated he did not recognize Lopez.

Deputy Meghan Pasos admitted she saw Lopez push Ballard's face into the control room wall, but did not report the incident.

After the Los Angeles City Attorney, Los Angeles County District Attorney, and Attorney General declined to file charges, the Sheriff discharged Deputy Pasos and notified Montez that he would be discharged for failure to conform to work standards by (1) failing to report his observation of a use of force by another deputy and (2) making false statements during the department's investigation, to wit: that he was unaware of the use of force by Lopez; that he did not hear the confrontation between Lopez and Ballard; that he did not observe a trustee cleaning blood from the control booth wall; and that he could not recognize Lopez on a videotape.

Montez appealed his discharge to the Commission, which held an evidentiary hearing. At the hearing, Montez testified that he heard nothing untoward during Lopez's search of Ballard on the elevator landing, could not recall observing blood on the control room wall, and did not recognize Lopez in the video of the control room area.

The hearing officer found that the department had shown its allegations were true. The officer found Montez's testimony that he could not hear Lopez striking Ballard in the elevator landing to be incredible. The officer found that Montez became aware of the control room incident, falsely stated to investigators that he could not recognize Lopez as the deputy standing with him in the control room area, and falsely stated he did not know the trustee was cleaning blood off the control room wall.

4

The hearing officer nevertheless concluded the department had failed to meet its burden of proving that discharge was appropriate because Ramirez, the civilian custody assistant, was similarly situated to Montez but not similarly disciplined. Ramirez and Montez had been employed for a similar length of time with no prior record of discipline, and neither reported the use of force against Ballard and both made false statements during the department's investigation. The penalty for making a false statement in an investigation ranged from a 15-day suspension to discharge, yet Ramirez received only a five-day retraining discipline with pay. The hearing officer acknowledged that the department holds its peace officers to a higher standard than its civilian employees, but found no sound basis to treat Montez differently from Ramirez. Concluding discharge was not appropriate for one anomalous instance of poor judgment in light of Montez's otherwise unblemished record, the officer recommended that the Commission reduce his discipline to a 30-day suspension without pay.

The Commission initially voted to affirm the hearing officer's finding as to Montez's conduct but disagreed with the finding that discharge would be inappropriate. However, after Montez objected to the Commission's proposed decision, it reversed itself on the latter point, and reduced his discharge to a 30-day suspension without pay.

The county petitioned the superior court for a writ of mandate overturning the Commission's decision insofar as it reduced Montez's discipline, contending it was unsupported by the Commission's own findings. Montez opposed the petition but expressly disavowed any challenge to the Commission's or hearing officer's factual findings.

5

The trial court agreed with the county.  It found Montez's false statements during the department's investigation forfeited the trust of the department and the public, which could subject him to proceedings under *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.E.2d 215] [prosecution has a duty to disclose material exculpatory evidence, including potential impeaching evidence] should he ever be called upon to testify in a criminal case, and discharge was the only reasonable remedy.  The court granted the county's petition and issued a writ directing the Commission to set aside its decision reducing Montez's discipline and "reconsider its action in light of th[e] court's statement of decision, and to take any further action specially enjoined on it by law."

Montez appealed.

## DISCUSSION

### A.  Standard of Review

A writ of mandate will issue "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station . . . ."  (Code Civ. Proc., § 1085, subd. (a).)  Where the writ is sought for the purpose of inquiring into the validity of a final administrative decision made as the result of a proceeding in which an evidentiary hearing is required, "the case shall be heard by the court sitting without a jury."  (Code Civ. Proc., § 1094.5, subd. (a).)  "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is

6

not supported by the findings, or the findings are not supported by the evidence." (*Id.* at subd. (b).)

" '[In] a mandamus proceeding to review an administrative order, the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 217 (*Skelly*).) "In considering whether such abuse occurred in the context of public employee discipline, . . . the overriding consideration . . . is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, '[h]arm to the public service.' [Citations.] Other relevant factors include the circumstances surrounding the misconduct and the likelihood of its recurrence." (*Id.* at p. 218.)

When an administrative body's findings are not in dispute, abuse of discretion is established where the body's order or decision is unsupported by the findings. (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514-515.) The court conducts a "de novo comparison of the findings and the penalty" to ensure that the findings are not "inconsistent with [the administrative body's] action in reducing the penalty," resolving all reasonable doubts in favor of the administrative decision. (*County of Santa Cruz v. Civil Service Commission of Santa Cruz* (2009) 171 Cal.App.4th 1577, 1584 (*Santa Cruz*); *Topanga*, at p. 514.) The court may not substitute its own judgment for that of the Commission, nor "disturb the agency's choice of penalty absent ' "an arbitrary, capricious or patently abusive exercise of discretion" ' by the administrative agency" (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 628), but must uphold the penalty if there is any reasonable basis to sustain it. (*Deegan v. City of Mountain*

*View* (1999) 72 Cal.App.4th 37, 46.) Only in an exceptional case will an abuse of discretion be shown because reasonable minds cannot differ on the appropriate penalty. (*Id.* at p. 45; see *Kolender v. San Diego County Civil Service Com.* (2007) 149 Cal.App.4th 464, 471 (*Kolender*) [the court may find an abuse of discretion where an agency's decision exceeds the bounds of reason].)

We review a penalty determination by the Commission under the same abuse of discretion standard applied by the trial court. (*Santa Cruz, supra,* 171 Cal.App.4th at p. 1581.)

**B.  Harm to the Public Service**

Here, the findings of the Commission were not in dispute. The hearing officer found that Montez failed to report two instances of inmate abuse and made multiple false statements during an investigation of the abuse. He falsely denied knowing that Deputy Lopez had assaulted Ballard during the first incident, denied knowing that the second incident had occurred, and denied recognizing Lopez standing next to him in video footage taken after the second incident. The only issue is whether in light of these findings the Commission's decision to reduce Montez's discharge to a 30-day suspension was an abuse of discretion.

"In considering whether an abuse of discretion occurred in the discipline of a public employee, the overriding consideration is the extent to which the employee's conduct resulted in, or if repeated is likely to result in, harm to the public service." (*Warren v. State Personnel Bd.* (1979) 94 Cal.App.3d 95, 107-108.) Whether an employee's conduct has resulted or is likely to result in harm to the public service if repeated requires consideration of the nature of the employee's profession, because "some

8

occupations such as law enforcement, carry responsibilities and limitations on personal freedom not imposed on those in other fields." (*Thompson v. State Personnel Bd.* (1988) 201 Cal.App.3d 423, 429.)

Peace officers specifically are held to higher standards of conduct than civilian employees, and dishonesty by law enforcement personnel is considered to be highly injurious to their employing agencies. (See, e.g., *Paulino v. Civil Service Com.* (1985) 175 Cal.App.3d 962, 972 [upholding dismissal of deputy sheriff who lied about sick leave usage]; *Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 761 [upholding dismissal of correctional officer for dishonesty, attempted theft of state property, and insubordination].)

In *Kolender v. San Diego County Civil Service Com.* (2005) 132 Cal.App.4th 716, a Sheriff's deputy on duty at a detention center lied to an investigator about another deputy abusing an inmate. (*Id.* at p. 719.) The Sheriff discharged the deputy for "lack of truthfulness" and "acts incompatible with and/or inimical to the public service," but a civil service commission reduced the termination to a 90-day suspension despite finding that all the charges had been proven. (*Id.* at p. 720.) The appellate court reversed the commission's decision, holding it exhibited "indifference to public safety and welfare" and was a manifest abuse of discretion. (*Id.* at p. 721.)

In *Santa Cruz*, a correctional officer complained to the county Sheriff that her supervisor, a Sheriff's sergeant, had treated her unfairly due to her gender. During the ensuing investigation the sergeant made false statements, for which the Sheriff ordered him demoted to deputy. The sergeant appealed his demotion to the Civil Service Commission of Santa Cruz,

9

which found he had made false statements during the investigation and had been insubordinate and willfully disobedient. The commission nevertheless concluded that demotion was overly harsh, and ordered the discipline reduced to a 30-day suspension without pay. (*Santa Cruz*, *supra*, 171 Cal.App.4th at p. 1581.)

The Court of Appeal reversed, holding that the commission's own findings that the sergeant had "made false statements, was insubordinate and was willfully disobedient, did not support a reduction of the penalty; rather, they provided a basis for the original demotion ordered by the Sheriff." (*Santa Cruz*, *supra*, 171 Cal.App.4th at p. 1584.) "The honesty and integrity of a Sergeant in the Sheriff's department is paramount to the public safety and trust," the court observed, "and breach of that trust is cause for grave concern. . . . Dishonesty on the part of a Sergeant in the Sheriff's department is a breach of public trust, and ultimately affects the Sheriff's ability to effectively serve the public." (*Id.* at p. 1583.) In addition, the sergeant's interference in the internal investigation of the gender bias claim placed the county at risk of liability, and " 'exposed the governmental entity to the prospect of litigation.' " (*Ibid.*)

In *Hankla v. Long Beach Civil Service Com.* (1995) 34 Cal.App.4th 1216 (*Hankla*), the Court of Appeal reversed a decision by a civil service commission to reinstate a police officer despite the commission's own finding that the officer had unnecessarily armed himself with a gun and negligently discharged the weapon, wounding a civilian. (*Id.* at p. 1226.) The court held that the officer's conduct harmed the public service because law enforcement officers " 'are the guardians of the peace and security of the community, and the efficiency of our

whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them.'" (*Id.* at p. 1224.) The court held that the commission's findings did not support suspension rather than discharge because "[f]orcing the police department to retain an officer who is unable to handle competently either his emotions or his gun poses too great a threat of harm to the public service to be countenanced." (*Id.* at p. 1226.)

In *Kolender*, *supra*, 149 Cal.App.4th 464, a correctional supervisor twice miscalculated inmates' early release and other credits, resulting in the inmates serving incorrect sentences. The San Diego County Sheriff demoted the supervisor for incompetence or performance of acts "incompatible with or inimical to the public service." (*Id.* at p. 468.) The San Diego County Civil Service Commission ruled that the supervisor was guilty of acts incompatible with and/or inimical to the public service but ordered the penalty modified from a permanent to a temporary demotion in light of her overall rating of "fully competent" as a supervisor. (*Id.* at p. 469.) The Court of Appeal reversed, holding that the commission's decision to reduce the level of discipline to a temporary demotion "fail[ed] to adequately account for the overriding goal of preventing harm to the public service." (*Id.* at p. 474.)

Here, Montez's failure to report two incidents of abuse of an inmate constituted an inexcusable neglect of his duty to safeguard the jail population. (See *Kolender v. San Diego County Civil Service Com.*, *supra*, 132 Cal.App.4th at p. 722 ["The safety and physical integrity of inmates is one of the office's paramount responsibilities"].) His lies during the subsequent investigation

11

hindered rectification of the situation, brought discredit upon his position and department, and forever undermined his credibility. "A deputy sheriff's job is a position of trust and the public has a right to the highest standard of behavior from those they invest with the power and authority of a law enforcement officer. Honesty, credibility and temperament are crucial to the proper performance of an officer's duties. Dishonesty is incompatible with the public trust." (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 231 [deputy abused jail inmates and lied about it to his superiors].)

Nothing in the record offers reason to hope Montez would act differently in the future should he be faced with a similar situation.

"The public is entitled to protection from unprofessional employees whose conduct places people at risk of injury and the government at risk incurring liability." (*Hanka, supra,* 34 Cal.App.4th at p. 1223.) It is simply intolerable that dishonesty and a culture of silence that countenances abuse of prisoners be permitted within the ranks of those charged with public safety and welfare. (See *Fout v. State Personnel Bd.* (1982) 136 Cal.App.3d 817, 821.)

We therefore conclude reasonable minds could not differ with regard to the appropriate disciplinary action in Montez's case. The Commission's decision to reduce his discharge to a 30-day suspension was unsupported by its own findings, and thus constituted an abuse of discretion.

## C. Circumstances Surrounding the Misconduct and Likelihood It Will Recur

In reviewing an administrative decision concerning employee discipline we consider as secondary factors the

"circumstances surrounding the misconduct" and the "likelihood of its recurrence." (*Skelly*, *supra*, 15 Cal.3d at p. 218.)

Here, the Commission observed that Montez received ratings of "Very Good" in his performance evaluations, including after the use of force incidents. He continued to perform his duties at the jail for a year after the incident with no reports of abuse or misconduct. The Commission concluded from these facts that the misconduct was unlikely to recur.

We agree with the trial court that this conclusion was unwarranted. Montez never recanted the false statements he made to investigators, but instead repeated them at the Commission hearing. "Honesty is not considered an isolated or transient behavioral act; it is more of a continuing trait of character." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 719; *Ackerman v. State Personnel Bd.* (1983) 145 Cal.App.3d 395, 399.)

As the court observed in *Kolender v. San Diego County Civil Service Com.*, *supra*, 132 Cal.App.4th at page 722, where a Sheriff's deputy was found to be complicit in covering up abuse of an inmate, "[n]o requirement exists that [the] . . . Sheriff's Office retain officers who lie and protect deputies who harm inmates; rather, the Sheriff [is] entitled to discharge [such an officer] in the first instance."

## DISPOSITION

The judgment granting the petition for a writ of mandate is affirmed.  The County of Los Angeles is to recover its costs on appeal.

CERTIFIED FOR PUBLICATION


                                        CHANEY, Acting P. J.


We concur:



          BENDIX, J.



          WEINGART, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.